Turney, J.,
delivered the opinion of the Court.
The Circuit Judge charged the jury:
“If the Officers of the Bank had notice that the money was to be used by the defendant’s intestate in aid of the Southern Confederacy, as for the manufacture of one of the ingredients of gunpowder,, and with a view’ and for the purpose of so aiding the Confederacy they advanced the money, then your verdict should be for the defendant.”
*467 This is error. In Thorington v. Smith, 8 Wallace, 12, 13, the _ Supreme Court of the United States say: “ We have already seen that the people of the insurgent ■States, under the Confederate Government, were in legal ■contemplation substantially in the same condition as inhabitants of districts of country occupied and controlled by an invading Belligerent. The rules which would apply in the former case would apply in the latter; and,, as in the former ease, the people must be regarded as subjects of a Foreign Power; and contracts among them •be interpreted and enforced with reference to the conditions imposed by the conqueror; so in the latter ease, the inhabitants must be regarded as under the authority of the insurgent' Belligerent Bower, actually established as the Government of the country, and contracts made with them ■must be interpreted and enforced with reference to the condition of things created by the acts of the Governing Power.”
Now, what was “ the condition of things created by the acts of the Governing Power,” at the making of the note in suit? It was, the seceding States, including the State of Tennessee, had by the solemn acts of their peoples in Convention assembled, or by overwhelming majorities at the Ballot Box, withdrawn from the Union, and organized and called into real active existence an integral, independent Government, — under >the name of “ The Confederate States .of America,”— complete in its several Departments, clothed with all '-the powers, and discharging all the functions incident to a Sovereign State. Under its Constitution, which had ■been formally and enthusiastically adopted, without ap *468 preciable dissent, by a tremendous popular vote, the seceding States had re-organized their Governments,— elected their Governors and Legislators, and established their Courts, — and had achieved every act necessary to the perfection and successful administration of a Civil Government, and were maintaining its supremacy and asserting its authority by arms.
The United States Government was unable to give to those within the Confederate States Government who •adhered to the cause of the Union any assistance, hence they were compelled to look to the Confederate laws and authority for protection, and in return to yield submission and obedience to those laws and authority.
Just so were the friends of Secession within the loyal States compelled to yield obedience to the laws of the United States; — the one was as much without relief as the other; — and the one Government was as unable to give assistance to its friends within the enemy's lines as was the other.
Yattel, p. 97, says: “The State is obliged to defend and preserve all its Members, and the Prince owes the same assistance to his subjects. If, therefore, the State or Prince refuse or neglect to succor a body of people who are exposed to imminent danger, the latter being thus abandoned, become perfectly free to provide for their own safety and preservation in whatever manner they find most convenient, without paying the least regard to those, who by abandoning them, have been the first to fail in their duty.”
How could the people within the Confederate States *469 provide for their safety and preservation except by obedience to and compliance with the laws. Every act was measured and determined by laws in antagonism to those of the United States, although in many instances the same language was employed and the same end intended for its people, as for those of the United States. Still they were adopted in antagonism, because adopted by States which had withdrawn from the Union and were at war with it. Their nonobservance was remedied by themselves, and the United States were powerless to prevent or hinder, — leaving but one course to the citizen, i. e., submission to the Powers that were.
Trying the case by this rule, “interpreting and enforcing the contract with reference to the condition of things created by the acts of the Governing Power/’ it results that the Government of “The Confederate States of America” and its constituent Members had the power, and exercised it, of making laws for their own government and that of its citizens: — that the citizen had no escape from them: — that this contract was made freely and voluntarily, and was lawful, — “interpreted with reference to the condition of things” at the time of its creation; which “made,” as Chief Justice Chase says in the opinion already quoted, “obedience to its authority in civil and local matters, not only a necessity, but a duty.”
It has been repeatedly held that the Government of the Confederate States was a Government De Facto, with belligerent right? In Smith v. Brazleton, 1 Heis., 46, Judge Nelson, a statesman and jurist, in whose *470 opinion we see the hand of a master, said, ■“ That although municipal rights of sovereignty remained in the United States during the late Civil War, and could he ■re~asserted whenever and wherever the Government was, .mccessful in arms, yet while the war was pending and wherever the Government was unable to assert its authority, the belligerent rights of the parties to the war-were precisely the same, and neither could lawfully assert any belligerent right superior to or different from, the other.”
It must be conceded that it is a belligerant right of the first importance to use gunpowder; the right to use carries with it the right to procure by purchase or manufacture, and in the manufacture the right to-all the means in reach for its accomplishment. Then if it was lawful for the State to do these things, by what rule is it unlawful for the citizen to contribute to the lawful act of his State? The State, as a’ State,, cannot manufacture powder, but must do it through employes or persons, — individual constituents of the aggregate composing the State.
A State having a right may employ all the means-necessary to the enjoyment of that right, and it is a gross solecism to say that the State may lawfully have-a thing, but may not lawfully engage' its citizens to-create that thing, or that its citizens may not voluntarily do so.
There is no conflict of opinion between this holding and the case of Puryear, Adm’r, v. McGavock et als., manuscript opinion by Judge Deaderick, as the trans *471 action in that case was in April, 1861, before action was taken by the State in the matter of separation.
Note.—The opinion above was delivered at Nashville, December Term 1872, and introduced here as conclusive of the numerous cases, still pending in the Courts of. the State, involving the principles it determines. It was recently re-affirmed, without a written opinion in the case of The Union Bank of Tennessee v. Alexander Pattison, at Jackson, September Term, 1876.—J. C. M.
Reverse the judgment.